Taylor, C. J.
delivered the Opinion of the Court s
It may be considered as a settled principle, that there are cases in which the shipper of goods is liable to the payment of a pro rata freight, notwithstanding the existence of a charter party; which provides that the freight shall be paid only on the delivery of the goods at the port of destination.
Some of these exceptions to the general rule are produced by an inevitable necessity; others are dictated by the clearest principles of justice and equity, or founded on the tacit agreement of the parties.
If, for the preservation of the ship and the residue of the cargo, a portion of it is thrown overboard, the merchant will be indemnified by a general average, but he is liable to the payment of the freight of the goods thus sacrificed, upon the arrival of the vessel.
Necessity may compel the Captain to sell a part of the cargo for victuals and repairs ; in which case, the owner of the vessel must pay the merchant the price which his goods wmuld have brought at the destined port; but he may also charge him with the full freight in the same haanner as if they had been safeiv delivered. Afiother corollary, from the same principle is, where a neutral vessel is‘taken, carrying the property of a belligerent, the *18 Captain is liable to the payment of full freight, because bis act prevented the completion of the voyage, and iá equivalent to an actual delivery of the goods to the con-1 signee.
The Law will likewise imply an undertaking to'paya ratable freight, from the owner’s receiving the goods at á port short of that of delivery ;-where the ship is preVented hv some clisaste:* from prosecuting the voyage, and all expectation of ulterior profit, either to the owner or shipper, totally destroyed.
It has been long since established as a rule in the Marine Law, and is adopted by most of the commercial nations in the world, that the master may in such case hire another ship to convey the goods, and so entitle himself to his full freight. But if he is unable, or declines to do this, and the goods are there received by the merchant, he becomes entitled to a freight pro rata.
The principle was first distinctly recognized in England, in the case of Lutwidge v. Gray and others, determined in 1733.
Lutwidge. the owner of a ship, let her, by charter party, to Gray and Others, residents of Glasgow}, for a voyage from Glasgow to Maryland or Virginia, and back from thence to Glasgow ; and was to receive freight from them for the homsArard cargo only. The ship sailed to Virginia and there delivered her outwa d cargo, and took ora board a cargo of tobacco; part of which belonged t® other persons, and'was taken to complete the, lading. Gray Co. insured their part of the cargo with persons living at Bristol. The other part was not insured. On the return homeward, the ship was cast away at Youghal m Ireland, which is within a short distance of Glasgow, and part of the cargo was saved and deposited in the custom office there. Lutwidge, as soon as he knew of »the mis *19 fortune, informed Gray fs? Co. of it, and told them he should provide another ship to transport the tobacco which was saved. Gray ⅛? Co. abandoned their part o,f the cargo to their insurers, and endorsed over the bills of lading to them. Lutwulge provided another ship at Xoughall, bat the insurers took the part of the cargo abandoned to tfiem, and conveyed it to Bristol. The agent of the proprietors of the other part of the cargo sent it to Glasgow in another, vessel. Lutwulge brought an action against Gray and others, for his freight accord* ing to the charter party, in the Court of Admiraly in ■ ‘Scotland., which, after a decision there and two decisions in the Court of Sessions, was finally adjudged in House of Lords in England, who declared that Gray and others were liable for the full freight of such of the goods as were given up to the insurers, and for the freight pro rata itineris of such of the goods as were brought to Glasgow, notwithstanding some of the tobacco was found damaged and burnt there.
It is evident, that the full freight was allowed in this case, because the owner of the ship had provided another to transport the /goods to Glasgow, of which Gray would not avail himself; preferring rather to abandon them to his underwriters. The pro rata freight only was allowed as to the others, because they had reason to suspect that the master of the hired t'essel would not deliver the pro-pe: ty at Glasgow, but at some other port; and therefore they were justifiable in providing a vessel for their own use.
In the case of Luke v. Lyde, which occurred more than twenty years afterwards, the above doctrine was fully adopted; on which occasion Lord Mansfield says, “ If the master has his election to provide another ship to. carry the goods to the port of delivery, and the merchant does not even desire him to do so, the merchant is stiff *20 entitled to a proportion of the former part of the voyage*.” This doctrine is recognized in several subsequent ^ cases-;† and as the recovery is not sought for on the charter party, because it would then be necessary to prove a performance of the whole voyage, it can only be effected where the merchant receives the goods at an intermediate port, or does some act which is equivalent. Where the loss is total, no freight is due; but this total loss differs from a technical total loss as between insured and insurer. If part of the goods are saved, the loss is not total as between the owner of the ship and the merchant. Tie latter, it is true, may avoid the payment of freight by refusing to have any thing to do with the cargo; but if he receive what is saved, he tacitly agrees to pay for the transportation.
Does an abandonment to the insurer render the merchant equally liable to the payment of freight with an acceptance of the goods ? It is believed by the Court, that both acts stand upon the same principle, and cannot be distinguished from each other for the purposes of this case. The property remains in the merchant until some act is done calculated to divest him of it. The abandonment in this case, was the last exercise of “an act of ownership, for purposes highly useful and important to the owner; since it transferred all his right to the insurer, and entitled him to recover for a total loss. For it is a general rule, that where the property is saved, but the voyage lost, the insured can only recover upon an average and not a total loss, unless he does abandon : otherwise, he might retain the property saved, and receive from the insurer a full indemnity. But if the latter is to pay the whole insurance, he must have poVer to dispose of the property for his own benefit, that bis loss may be rendered as light as possible. In the sapte manner, if the holder of a bill of exchange, incase of non-payment, fail to give notice to the owner, he is considered as giving ere- *21 4⅛ to the acceptor; and, therefore, the loss, if any, must fall on him.
The master might have retained the goods for the freight earned, and, therefore, have withheld his consent from the abandonment, and sold the goods for his own compensation. Not having done so,1 he ought tó be con" sidered as having surrendered them to the Defendants, for the express purpose of enabling them to abandon and recover for a total loss ; and they should be considered as having accepted them for the same purpose, upon an implied promise to pay the freight.
Hall, J.
This Action is not brought upon the original contract entered into by the parties ; because, bn that contract, there could be no recovery by the Plaintiff, as he himself has not performed it. But it is brought upon an implied assumpsit, to recover freight pro ratq. itineris peracti.
When the Law imposes an obligation on any one, to pay a sum of money, it is because a benefit, some how or other, has previously arisen to such peráon. And I admit, in the case now under consideration, that if the Defendant had received that part of the cargo which was saved, authorities are not wanted to show, that they would be bound to pay to the Plaintiff freight pro rata itineris. But this was not the case. It does no appear that they were at all benefited by it. They abandoned in favor of the underwriters, upon whom, (if upon any person), the obligation of paying freight was created, be» cause they were the persons benefited.
Whether the Plaintiff, (as he was not requested by defendant to procure another ship to proceed on the voyage) had not a lien on the cargo saved, for freight, as against the underwriters; or whether, as it was given up to them, the Law would not raise an obligation upon them *22 to pay freight pro rata itineris, it is not necessary n6W to consider. But such a course would seem to be more just, .than that the Defendants should pay it.
The case of Lutwidge & another v. Gray others, seems not to be applicable; because in that case the owner of the ship which was cast away, offered to furnish another ship and proceed on the voyage ; in consequence of which he recovered full freight on the Original contract, not upon an implied assumpsit; and the shippers in that case, abandoning to the underwriters, made no difference, because by their so doing, they could not exonerate them-sqjves from their original contract to pay freight, to the benefit of which the Plaintiff was entitled, as it was owing to no fault in him that the contract had not-been executed on his part.
The same may be said of Luke & another v. Lyde. In that case, the goods were not abandoned, but received by the freighter. Of course, as he was thereby benefited, he was compelled to pay freight pro rata itineris.
In this Opinion it is likely I may be mistaken, for two reasons ; first, because, from local situation, I have not often been led to the consideration of such questions; and, secbndly, because a majority of my Brethren think so. But judging for myself, I cannot agree that Judgment shall be entered for the Plaintiff.
Lowrie, J.
After long advisement in this case, a bare majority of the Court has adjudged that the Plaintiff is entitled to recover pro rata itinéris ; for I understand Judge Seawell as giving fto opinion, having been employed in the cause before he left the bar; in which Judgment I cannot accord.
Had the Plaintiff brought his action on the original contract between these' parties, no doubt, I suppose, is entertained by any one, but he could r.ot have recovered. *23 if, therefore, he can recover in this form of action, I suppose it is also admitted, that it must be upon a new Contract, either expressed or implied. And I agree, the Plaintiff ought to recover, if the facts of the case will warrant the Court in finding the one, or implying the other. My Brothers, who have decided this cause for the Plaintiff, think they do, and, that it fairly comes within the principles of Lutwidge & others v. Gray & others, and Luke v. Lyde.
'The apportionment of freight usually happens when the ship, by reason of any disaster, goes into a port short of the place of destination, and is unable to prosecute complete her voyage. In such case, the master may, if he will and can do so, hire another ship, and so entitle himself to his whole freight; but if he is unable or declines to do this, and the goods are received by the merchant, the general rule of the Maritime Law is, that freight ""Shall be paid pro rata*. This rule, I admit, has been adopted by the Courts of Law both in England and America. But let it be observed, that a part of the rule is, that the goods are received by the merchant. And I take it, that the receipt of the goods by the merchant himself, or by his agent, or some act of his, equivalent thereto, is in every instance necessary in order to subject him to the payment of freight pro rata itineris.
In Luke v. Lyde,† Lord Mansfield said, “ It matters not if the goods are spoiled, provided the freighter takes them and he seems to ground himself upon the receipt of the goods, by the freighter or merchant, where he says, “ There can be no doubt but that some freight is due ; for the goods were not abandoned by the freighter, hut received by him of the recaptors.” In another part of his argument, in speaking of the power and authority of the merchant to exonerate himself from freight, he said, “ If hé abandons all, he is excüsed freight; and he *24 may abandon all, though they are not all lost.” I need hot here quote authority either to prove, that Upon a total loss n0 frejghr ⅛ due, or to show that this case is one of that description for which'no freight was due, or eould be demanded or recovered, except the Defendants, by some act of theirs' subsequent to the stranding of the ship and loss of the cargo, have made themselves liable thereto, v
Here I find myself utterlv at a loss to discover from this record how the Defendants, can be subjected to the payment of freight. There is no evidence that they ever received one cent of the property, either from the hands of the owner, master, or Commissioners of Wre'ck ; nol-is there evidence that their insurers did, or indeed that the part of the cargo saved from the wreck sold for more than the expense of salvage, or for what it sold. The record of the case only proves that the “ Defendants abandoned their cargo to their insurers; that it was sold by the Commissioners of Wrecks, under the authority of the master; and that they, the Defendants, became the purchasers.” This statement in part proves, that no part of the cargo ever did come to the hands of the Defendants or their insurers. It is eqüally silent as to the an cu t of sales, or how, the same was appropriated. This, it would seem to me, puts an end to the question of freight pro rata; for, most clearly, there must be a receipt of the goods by the merchant or some agent of his, in order to subject him to freight pro rata itineris. In the cases of Lutwidge & How v. Gray & al. and Luke v. Lyde, the Court grounded itself upon the receipt of the tobacco saved by the insurers in the first case, and the receipt of the fish by the merchant from the recaptors in the last case.
I have, therefore, no hesitation in deciding, that upon the facts'set forth in this record, the Plaintiff ought not to recover. '
*25 feut, placing this case on the Footing the majority of the Court has done, still I am humbly of the opinion, the Plaintiff is not entitled to recover. This case is circumstanced very different from the case of Lutwidge v. Gray & Co. The owner, in that case, as soon as he was informed of the disaster, gave notice to the merchants that he would provide another ship and complete the voy.age. Rut to that, the merchant disagreed, abandoned the cargo to his insurers, and endorsed over to them the bills of lading, and they the insurers, refused to have the tobacco carried to Glasgow, but took it into their own possession, and upon that statement of facts, the cause was decided in Parliament.
We are warranted in this, from the words of Lord Mansfield himself, who was of Counsel in the cause.
In the trial of Luke v. Lyde, his Lordship said, “ If a freighted ship becomes accidentally disabled on its voyage, without the fault of the master, the master has his option of two things, either to refit it, if that can be done in convenient time, or to hire another ship to carry the goods to the port of delivery If the merchant disagrees to this, and will not let him do so, the master will be entitled to the whole freight of the full voyage. And so it was determined in the House of Lords, in the case of Lutwidge & How v. Gray al.
As to the other part of the decision tv he re the Court decided that freight, in proportion to the part of the voyage performed, Was, payable, it was upon another principle, namely, that whereas the merchant refused to have his goods shipped on board the vessel that was provided unless the master would sign other bills of lading, which he refused to do; upon which, the merchant took the tobacco into possession, which must have been with the consent of the master, or full freight would have been *26 clue duefor that part also. Hetice it was, that only freight prorata was adjudged due and payable.*
Upon these two principles, both the cases of Lutwidge & How v. Gray & al. and Luke v. Lyde were decided. The owner, in the first case, provided another ship and completed the voyage, ás to that part of the cargo saved bv the wreck, and which the merchant agreed he should take on board, and for which he recovered full freight; and freight pro rata, only for that part which the merchant refused to put on board, and which the master suffered him to take imo possession.
Freight pro rata itineñs is never recovered but uport the ground of a new contract or benefit received by the merchant. In the case of Leddard v. Lopes,† Lord Ellenborough said, the case of Luke v. Lyde has often been pressed beyond its fair bearing. But the true sense of it has been explained bv my Brother Lawrence, in Cook v. Jennings,‡ and by my Brother Le Blanc, in Mullay v. Barker.§ In the cases referred to, Lawrence says, “The owner is not entitled to freight pro rata unless under a new agreement.” And "he admits, that perhaps the receipt of the goods by the merchant, might be evidence of a new agreement between the parties, Le Blanc says, “A recovery might be had upon an implied assumpsit, for a benefit already conferred on the merchant, which may he implied from his acceptance of the goods. And he adds, “ But here ro benefit can be implied to the Defendant from the Plaintiff.” And so I may say here. No benefit can be fairly implied to the Defendants in this case. There is no evidence of their acceptance of any part of the cargo; nor indeed of their insurers having received any part thereof. In short, there is no evidence of what became of it, other than that it was sold under the direction of the master; and for aught that appears, the master or owner may have received the whole amount *27 ©f sales, and may have, in virtue of his lien, paid himself. The owner’s iien was not defeated by any thing set forth in this record; and in case he parted with it, by delivering the part oí the cargo saved or the money produced by the sales thereof, to any person whatever, he ought to have recourse to such person and no other for his freight, if entitled to any. I feel confident in sayiug, that before freight pro rata in any case, can be recovered by any master or owner, it must appear that his lien has been deleated, either with his consent (which I admit implies, a contract) or the public act of some government, as an embargo for instance, hostile in us character, divesting him of the possession of the goods ; and in such case, perhaps, he might recover, although they did not come to the possession of the freighter or merchant.
But I cannot accord with the rule, that, because the merchant has received the full value of his goods from his insurers, that he is, on that account, liable to pay freight. Such a rule would subject the merchant, in every case where he had insured his property and met with a total loss, to the payment of freight. In every such case, he would abandon to the insurer, (for the word ‘ abandon,’ I find, is used even where the loss is total), and be entitled to the full amount of the, value of his goods lost. But if such a rule should obtain, it, would be at variance with the policy of the Maritime Law of all countries, as far as I have been informed; which goes not only to deprive the owner of freight, in such case, but, also, the hands of wages. It is to be feared, such a rule would introduce great negligence, both in the master and mariners, (for where there is freight there is wages);, which it has always been the policy of all governments ta obviate.
I understood the Coupt, among other reasons for sis opinion, to say, that the Defendants had received full &⅜- *28 fisfaction from their insurers for the, loss of their cargo,, and ther lore it was but reasonable that they should pay irei,llt
If I should still be in an error, it will be a consolation to me, that my error will not alter the Law in this case, nor work an injury. But as at present unprepared, I am obbliged to say, that I think the Plaintiff ought not to recover.

2 Burr 882.

 1 Bos & Pul 634

Abb. on Ship 366

2 Bur. 882. & 1 Black Rep. 190.

Abb. on Ship. 336

 10 East Rep. 526

 7 Term Hep.

 5 East Rep. 316.